## B. B. LARSON v. J. P. NYGAARD AND ANOTHER. J. P. NYGAARD, RESPONDENT.[1]

January 21, 1921.

No. 21,922.

**Arbitration—avoidance of award.**

1. A party cannot avoid the award of arbitrators on the ground that they received evidence in the absence of the parties where they were expressly authorized to do so.

**Same — where evidence is conflicting.**

2. Arbitration is favored in law, and the courts will not interfere with the conclusions drawn by the arbitrators from conflicting evidence, nor set aside an award made in good faith and in the exercise of an honest judgment, even if the court would have reached a different result.

**Same — basis of impeachment of award.**

3. To impeach an award on the ground that the arbitrators reached a wrong conclusion, it must be shown that this conclusion was so

[1]Reported in 180 N. W. 1002.

at variance with any conclusion which could legitimately be drawn from the evidence before them as to imply bad faith or a failure to exercise an honest judgment.

Action in the district court for Norman county to set aside an award of arbitrators, to restrain G. O. Benson from paying the money deposited with him to defendant Nygaard and that he be directed to pay it to plaintiff. The case was tried before Grindeland, J., who made findings and ordered judgment confirming the award and in favor of defendant Nygaard for $1,100 and directed that G. O. Benson pay to defendant Nygaard the sum so deposited with him. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Ole J. Vaule* and *William P. Murphy,* for appellant.

*Brattland & McLaughlin,* for respondent.

TAYLOR, C.

In 1914 plaintiff, defendant Nygaard, Peter Norum and James Larson became partners in business under the firm name of The Halstad Automobile Company. They had and conducted a farm implement business, an automobile garage and repair shop and an electric light plant in the village of Halstad. Plaintiff furnished all the capital and had a one-half interest in the business, Nygaard had a three-twelfths interest therein, Norum a two-twelfths interest and James Larson a one-twelfth interest.

By the partnership agreement Nygaard and Norum were to conduct the business and receive a monthly salary of $60 each as a part of the expense, plaintiff was to receive interest on the capital furnished at the rate of seven per centum per annum, and the profits, after paying these salaries and the interest, was to be divided between the partners in proportion to their respective interests in the business. In 1916 Norum withdrew from the firm and transferred his interest to plaintiff, and plaintiff and Nygaard seem to have conducted the business thereafter. The implement business and the garage and automobile business were sold, and the proceeds were received by plaintiff. Thereafter Nygaard operated the electric light plant. Disagreements arose between him and plaintiff, and they concluded to terminate their business relations in

February or March, 1919, by Nygaard relinquishing all his interest in the firm to plaintiff on being paid the value of such interest. They agreed to have the value of this interest determined by arbitrators, and, to secure payment of the amount so determined, plaintiff deposited $1,000 with defendant Benson, cashier of the bank at Halstad. Thereupon Nygaard surrendered possession of the lighting plant to plaintiff and withdrew from the business. They mutually agreed upon Carl Snustad, Oscar Viker and Albert J. Grothe, three farmers living in the vicinity of Halstad, as arbitrators. They agreed that each should present his own case personally without any attorney or other representative at the hearings, and that the decision of the arbitrators should be binding, conclusive and final. These agreements were all oral. When the arbitrators assembled, the parties stated to them orally the matters to be determined, and then made their respective claims, and presented their testimony and such accounts and papers as they had. No record was made of the proceedings before the arbitrators or of the evidence submitted to them.

The arbitrators made their award in writing awarding Nygaard $700 for his interest in the business, $150 for unpaid salary and $250 for breach of a contract of employment for the year 1919.

Thereafter plaintiff brought this action to set aside the award and have the amount deposited with defendant Benson returned to him. Defendant interposed an answer asking for judgment on the award. The court sustained the award and directed judgment for defendant Nygaard for the amount thereof. Plaintiff appealed from an order denying a new trial.

Plaintiff contends that the award of the arbitrators was void because they received evidence in the absence of the parties and without their knowledge. It appears that after the parties had submitted their evidence the arbitrators called and questioned two witnesses in the absence of both parties and without informing either party of their intention to do so. That this would avoid the award, if done without the consent of the parties, is well settled as shown by the numerous authorities cited by plaintiff. But the court found, in substance, that the arbitrators were authorized by both parties to call these witnesses and take their

testimony in the manner stated, and the evidence amply sustains such finding. Plaintiff cannot be heard to complain because the arbitrators did what they had been expressly authorized to do when the controversy was submitted to them.

It appears that, in the proceedings before the arbitrators, plaintiff claimed that the business of the firm had resulted in a loss and Nygaard claimed that it had resulted in a substantial profit. The arbitrators found that the firm had made a profit, but were unable to determine the precise amount owing to the conflicting claims of the parties and the "muddled" and incomplete state of the accounts and statements submitted to them. From various facts referred to in the award, they reached the conclusion that Nygaard's share in the firm was worth at least $700 at which amount they fixed its value.

At the trial plaintiff again claimed that the business had resulted in a loss, but the only witnesses he called were the arbitrators who merely testified concerning the award and manner in which they arrived at it. The record shows, however, that after an argument, not made a part of the record, the court ruled "that you can't go into an accounting whether the business was operated at a profit or not." Later plaintiff made an offer to prove that on January 1, 1918, the assets of the firm were considerably less than the amount of capital which he had advanced, and the court sustained an objection to the offer. Plaintiff urges these rulings as error, and contends that the court should have received the evidence and have determined whether the firm had in fact made a profit or sustained a loss during the five years it had been in business. We are unable to sustain this contention. It clearly appeared that the award embodied the conclusions drawn by the arbitrators from conflicting evidence as to controverted facts. In such cases the court will never substitute its own judgment for that of the arbitrators, nor review the questions determined by them. 2 R. C. L. 389; 5 C. J. 181; Goddard v. King, 40 Minn. 164, 41 N. W. 659.

This was a very informal arbitration. The parties by mutual agreement selected three farmers, not versed in legal proceedings, to determine all matters in controversy between them. The proceedings were all oral. Each party was to present his own case. There were to be no at-

torneys or advisers. All technicalities were to be disregarded. The decision of the arbitrators was to be final and conclusive.

Arbitration is favored in the law as a simple, expeditious, inexpensive and amicable method of settling controversies, and an award made in good faith and in the exercise of an honest judgment will not be set aside, even if it appears that the court would have reached a different conclusion. Daniels v. Willis, 7 Minn. 295 (374); Goddard v. King, 40 Minn. 164, 41 N. W. 659.

The court found as a fact that the arbitrators acted in entire good faith in all things and that the proceedings were free from fraud, and there is no evidence in the case which would warrant any other conclusion.

Assuming that plaintiff could have proved that no profit had been made and that his offer was sufficient to entitle him to do so, yet the fact so proven would not have been sufficient to impeach the award. To impeach it on the ground that the arbitrators had reached a wrong conclusion, it was incumbent on plaintiff to show clearly that this conclusion was so at variance with any conclusion which could legitimately be drawn from the facts and evidence before them as to imply bad faith or a failure to exercise an honest judgment on their part. This could be done only by showing the facts and evidence on which the arbitrators based their decision; it could not be done by presenting different evidence to the court. And this was what plaintiff sought to do. The evidence before the arbitrators had not been preserved, and plaintiff made no claim that the evidence which he proposed to present to the court was the same as the evidence which had been presented to them.

Order affirmed.