# MILFORD A. COURNOYER AND OTHERS v. AMERICAN TELEVISION AND RADIO COMPANY.

83 N. W. (2d) 409.

May 24, 1957—No. 37,040.

*Silver, Goff, Ryan & Wallace* and *Allen H. Aaron,* for appellant.
*Robins, Davis & Lyons* and *Willard L. Converse,* for respondents.

MATSON, JUSTICE.

In each of three cases consolidated for trial, defendant employer appeals from an order denying a new trial.

Three employees of the defendant brought separate actions to recover the damages awarded them by the arbitrators of a labor dispute arising under the terms of a collective bargaining agreement entered into between the employees, a labor union,[1] and the defendant employer. Plaintiff employees had been laid off because of a slowdown in production. They claimed, however, that their layoffs violated the provisions of the agreement. Pursuant to an arbitration clause in the agreement, the dispute was presented to an arbitration board and the board directed that the employees be reinstated and be awarded back pay. After the company refused to comply with the award, the employees brought these suits to recover upon the awards for loss of earnings and other damages. The trial court concluded that the arbitration proceedings were regular and that the awards were binding upon the parties and ordered judgment for each of the employees. Defendant moved for amended findings or a new trial and from the denial of this motion we have this appeal.

It is conceded that plaintiffs when laid off were senior in length of service to the three employees who were retained by the employer. Whether, despite such seniority, the layoffs were proper depends upon the interpretation to be given to § 2, (a) and (b), of Article 8 of the union contract which apply to reductions in the union force. These subsections provide:

---

[1] The agreement was with the International Union of Electrical Radio and Machine Workers Local 1117, CIO, St. Paul, Minnesota.

"Section 2. (a) When it is necessary to reduce the working force and lay-offs become necessary, the employee having the *greatest length of continuous service, skill and ability* shall be the last laid off and the first recalled.

"(b) The employee retained or recalled must have the ability and skill to perform the work available without going through a training period of more than thirty (30) calendar days." (Italics supplied.)

Pursuant to the union contract the dispute as to whether the lay-offs were proper was submitted to an arbitration board of three members consisting of one member selected by the employer, one by the union, and a third neutral member selected by the two first mentioned. The contract specifically provides that any dispute which arises *"as to the meaning and application of the provisions"* of the contract, and which cannot otherwise be settled, shall be submitted to the arbitration board, and that a decision of the majority of that board *"shall be final and binding on both parties."* (Italics supplied.)

The power of the arbitrators to settle disputes is subject to another provision (Article 4, § 6) which reads:

"Section 6. The Arbitration Committee shall not have authority to modify, change or amend any of the terms or provisions of this Agreement or to add to or delete from this Agreement."

It is asserted that the trial court erred in upholding the validity of the arbitrator's decision. Defendant contends that the decision of the arbitrators is demonstrably and inescapably wrong because (1) the arbitrators placed a patently erroneous construction on the language of § 2, (a) and (b), by holding that the adjective *greatest* modifies only the words *"length of service"* and not the words *"skill"* and *"ability"*; (2) that in so doing seniority was erroneously determined to be controlling without giving the required consideration to the issue of whether the complaining employees had the greatest *skill* and *ability;* and (3) that the arbitration board in consequence of the foregoing violated the provision denying it the authority to modify or change the terms of the agreement.

 In passing on the issue of whether the award of an arbitrator may be set aside as invalid because of alleged misinterpretation of controlling contract provisions, it is well to bear in mind the general rule that an arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact,[2] including the interpretation of the terms of any contract,[3] and his award will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying his own theory, misconduct, or other disregard of duty.[4] An award will not be set aside merely because the court thinks the arbitrators erred either as to the law or the facts.[5] If the rule were otherwise, arbitration proceedings, instead of facilitating the settlement of controversies, would serve but to delay the final determination of the rights of the parties. Mistake which justifies the setting aside of an arbitration award refers to a situation where the arbitrators have not correctly applied their own theory, rule, or formula which they intended to apply, so that a mistake was made which brings about a result not in accord with their own reasoning and judgment.[6] A fatal mistake may, for example, be in the form of a mathematical error.[7]

 Since we here have no mistake by the arbitrators in the application of their own theory, rule, or formula, and no evidence of fraud, the arbitrator's award may be impeached only if it appears that their conclusions, and the inferences upon which they are based, are so at variance with any conclusions which might legitimately be drawn from the evidence before them—including the interpretation of the contract—as to imply bad faith or a failure to exercise

---

[2]See, Electric Power Const. Co. v. Allen, Lane & Scott, Inc. 367 Pa. 319, 324, 80 A. (2d) 799, 801; Goldstein v. International Ladies' Garment Workers' Union, 328 Pa. 385, 389, 196 A. 43, 46; 1 Teller, Labor Disputes and Collective Bargaining, § 183.

[3]See, Matter of Samuel Adler, Inc. 282 App. Div. 142, 122 N. Y. S. (2d) 8.

[4]Park Const. Co. v. Independent School Dist. 216 Minn. 27, 11 N. W. (2d) 649.

[5]Park Const. Co. v. Independent School Dist. *supra.*

[6]Goddard v. King, 40 Minn. 164, 41 N. W. 659.

[7]See, Nelson v. Charles Betcher Lbr. Co. 88 Minn. 517, 93 N. W. 661.

an honest judgment.[8] The interpretation given by the arbitrators to § 2, (a) and (b), is not so unreasonable or palpably wrong as to indicate either bad faith or a failure to exercise an honest judgment. Obviously, both subsections ought to be construed together. The majority of the arbitrators held that the phrase *greatest length of service* is to be construed as a unit which is in effect equivalent in meaning to the word "seniority" and that the adjective *greatest* does not modify the words *skill* and *ability*. In conjunction therewith subsection (b) was construed as defining the minimum skill and ability necessary to qualify a worker with seniority for retention in preference to other workers with less seniority though possibly possessed of greater skill and ability. In other words, the arbitrators concluded that these subsections meant that, if a worker had sufficient "ability and skill to perform the work available without going through a training period of more than thirty (30) calendar days," he should be retained if he had seniority even though employees junior in service had greater skill. The two subsections, when taken together, are not so free of ambiguity that it can be said that we have clear language which is not subject to the construction or interpretation given to it by the arbitrators. Undoubtedly, it is true under our decisions as well as under the decisions of other jurisdictions that seniority rights of employees arise only out of contract or statute.[9] Where, however, as here, a contract provision is not free of ambiguity, arbitrators in arriving at the intended meaning may reasonably take into consideration the fact that one of the principal purposes for entering into a collective bargaining agreement is usually to secure for the employees the prized right of seniority in case of layoff and promotion.[10] The mere fact that this court might well arrive at a different conclusion in interpreting the two subsections and hold that the adjective *greatest* modifies the words *skill* and *ability* is not of itself a justifiable ground for setting aside the arbitration award.

[8]See, Larson v. Nygaard, 148 Minn. 104, 180 N. W. 1002.

[9]Edelstein v. Duluth, M. & I. R. Ry. Co. 225 Minn. 508, 517, 31 N. W. (2d) 465, 470; Updegraff & McCoy, Arbitration of Labor Disputes, p. 130.

[10]See, Updegraff & McCoy, Arbitration of Labor Disputes, p. 130.

Since the interpretation placed upon § 2, (a) and (b), by the arbitrators is not so unreasonable or palpably wrong as to imply either bad faith or a failure to exercise an honest judgment their award must stand. Furthermore, since their interpretation is, therefore, controlling, there was no occasion for them to give consideration to the question of what employees were possessed of the greatest skill and ability. It also follows that in resolving the ambiguity in good faith they did not violate § 6. In arbitration proceedings the decision of an arbitrator who exercises an honest judgment in resolving ambiguities in the language of a contract is not to be impeached on the ground that he has thereby violated another contract provision which denies him the authority to modify, change, or amend any of the provisions of the agreement.

The order of the district court is affirmed.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.