*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1318**

Fern Hill Place Retail Association, Inc.,
Appellant,

vs.

Fern Hill Place Homeowners Association, Inc.,
Respondent.

**Filed April 18, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CV-14-17963

Kay Nord Hunt, Michel R. Moline, Lommen Abdo, P.A., Minneapolis, Minnesota (for appellant)

J. Robert Keena, Wilbert V. Farrell IV, Jason A. Raether, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondent)

        Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Randall, Judge.*

———————————————

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant retail association challenges the district court's denial of its motion to vacate an arbitration award, arguing that the arbitrator exceeded the scope of his power, there was no agreement to arbitrate, and the arbitration was conducted without proper notice. We affirm.

## FACTS

Appellant Fern Hill Place Retail Association, Inc. (RA) and respondent Fern Hill Place Homeowners Association, Inc. (HOA) are common interest communities that occupy portions of the same building and associated property. The RA and the HOA operate pursuant to a declaration of easements, covenants, and restrictions (declaration) that was filed with the Hennepin County Registrar of Titles on November 2, 2001. Section 9 of the declaration contains the following arbitration clause:

> All questions, differences, disputes or controversies arising hereunder (except those to be determined by the [a]rchitect) shall be settled by arbitration in accordance with the then-existing rules of the American Arbitration Association ("AAA"). . . . The arbitrators designated and acting under this [a]greement shall make their award in strict conformity with the AAA's rules and shall have no power to depart from or change any of the provisions thereof. Any such award shall be binding upon the [a]ssociations and enforceable by any court exercising competent jurisdiction over the [a]ssociations.

In December 2012, the HOA commenced an American Arbitration Association (AAA) arbitration proceeding against the RA, demanding $63,335.09 in allocated expenses, plus

attorney fees and interest. The demand stated that the nature of the dispute was that the RA was "in default of its financial obligations under the [d]eclaration."

On December 14, 2013, two days before the scheduled arbitration hearing, counsel for the RA, Jack Pierce, informed the arbitrators that there was no need for a hearing because the parties had settled their dispute. Counsel for the HOA, John Trout, confirmed that a settlement was reached. A few days later, Pierce sent Trout the final version of the settlement agreement, which was confirmed by Trout. Per the request of Trout, the arbitration proceeding remained open pending compliance with the terms of the settlement agreement.

The HOA approved the settlement agreement, had a board member sign it, and tendered the return of replacement reserve funds to the RA as required under the settlement agreement. After reaching settlement in December 2013 and continuing until April 2014, Trout contacted Pierce at reasonable intervals, inquiring as to the status of the RA's signing the settlement agreement and making the settlement payment. In these communications, Trout repeatedly informed Pierce that the HOA would move to have the settlement agreement confirmed if the RA did not execute and perform under the settlement agreement. In response to these communications, Pierce at times represented that the signature and payment were forthcoming. Pierce never notified Trout of any objections to the settlement agreement or denied that an agreement had been reached.

On April 21, 2014, the HOA brought a motion to the arbitrator who was presiding over the still-pending arbitration proceeding, seeking to confirm the validity and enforceability of the settlement agreement. The RA submitted a memorandum in

3

opposition to the HOA's motion, and the HOA submitted a reply memorandum. The parties discussed having an argument before the arbitrator. Steve Weintraut, the RA's new counsel after Pierce withdrew as counsel of record, asked for "the opportunity to review [the HOA's] [r]eply and request oral argument by noon on Monday, 7/14." The arbitrator indicated that he would review the parties' briefs and let them know whether he thought oral argument would be helpful. The RA never requested oral argument, and no oral argument was ever held. On July 29, 2014, the arbitrator issued his final order and award, confirming the validity and enforceability of the settlement agreement. On October 27, 2014, the RA brought a motion in district court to vacate the arbitration award, arguing, among other things, that the arbitrator exceeded his powers, there was no agreement to arbitrate, and the arbitration was conducted without proper notice. The district court denied the RA's motion to vacate the arbitration award and affirmed the award. This appeal followed.

## DECISION

"Arbitration is a proceeding favored in the law." *City of Brooklyn Ctr. v. Law Enf't Labor Servs., Inc.*, 635 N.W.2d 236, 241 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). "An appeal from an arbitration decision is subject to an extremely narrow standard of review and the reviewing court must exercise every reasonable presumption in favor of the arbitration award's finality and validity." *Aaron v. Ill. Farmers Ins. Grp.*, 590 N.W.2d 667, 669 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. June 16, 1999).

4

## I.

The RA first argues that the arbitration award should be vacated because the arbitrator exceeded the scope of his power. The Minnesota Uniform Arbitration Act provides that a court must vacate an arbitration award if the "arbitrator exceeded the arbitrator's powers." Minn. Stat. § 572B.23(a)(4) (2014). This court determines the scope of an arbitrator's authority de novo, and "[t]he burden of establishing that the arbitrator exceeded his authority is on the party who challenges the award." *Klinefelter v. Crum & Forster Ins. Co.*, 675 N.W.2d 330, 333 (Minn. App. 2004). "An arbitration award will be set aside by the courts only when the objecting party meets its burden of proof that the arbitrators have *clearly* exceeded the powers granted to them in the arbitration agreement." *Seagate Tech., LLC v. W. Dig. Corp.*, 854 N.W.2d 750, 760–61 (Minn. 2014) (quotation omitted).

The RA argues that the arbitrator exceeded his power by enforcing a private agreement outside the scope of the arbitration, specifically contending that the scope of the arbitration was limited to determining what, if anything, the RA owed the HOA because the demand claimed only that the RA "[was] in default of its financial obligations." But, the Minnesota Supreme Court has stated that whether the parties intended to arbitrate a given issue is determined by the text of the parties' arbitration agreement. *Id.* at 761. The arbitration clause in the declaration provides that "[a]ll questions, differences, disputes, or controversies arising hereunder . . . shall be settled by arbitration." Therefore, the arbitrator's power was not limited to the dispute laid out in the HOA's demand.

5

The RA argues that the "arising hereunder" language in the arbitration clause limits its scope, but cites no binding precedent in support of this proposition. The only limitation set forth in the declaration to the scope of the arbitrator's authority relates to questions that are to be determined by the building's architect. And, the Minnesota Supreme Court has warned that "[p]arties who want the courts to retain jurisdiction over matters of contract formation, or any other particular issues they foresee may arise in the business relationship, must expressly state such an intent when drafting the arbitration clause in the contract." *Onvoy Inc. v. SHAL, LLC*, 669 N.W.2d 344, 352 (Minn. 2003). We conclude that the declaration gave the arbitrator the authority to confirm the validity of the settlement agreement because it was a dispute that arose from the parties' obligations under the declaration.

The RA also contends that the arbitrator exceeded his authority because the declaration cannot be amended by arbitration. The declaration provides that it can be amended only by the affirmative vote or agreement of 67% of the unit holders and mortgagees of both the RA and the HOA. The RA argues that paragraphs 5-12 of the settlement agreement, most of which address the allocation of responsibility for services between the parties or provide procedures for making payments, "add, change, or contradict existing terms in the [d]eclaration."

The district court determined that the settlement agreement did not amend the declaration, but rather "re-pr[e]scrib[ed] or clarif[ied] the parties' obligations under the [d]eclaration." The district court also noted that the declaration provides that its provisions "shall be liberally construed to effectuate its purpose of creating a uniform plan for the

6

ownership and operation of a first-class multi-unit commercial and multi-unit residential building" and that "whenever a matter arises which is not covered by th[e] [d]eclaration, such matter will be resolved in a manner which will be in the best interests of both [the RA and the HOA]." Based on these provisions, the district court reasoned that the declaration "contemplated and encouraged" subsequent agreements between the parties.

Based on our review of the declaration and the settlement agreement, we conclude that the settlement agreement did not amend the declaration. Rather, the terms of the settlement agreement that the RA objects to as amending the declaration do not conflict with the express terms of the declaration, but merely categorize individual expenses or specify processes for the implementation of the terms of the declaration, presumably in an attempt to prevent future disputes between the parties. Because the settlement agreement merely provides a procedure for the parties to perform their existing obligations under the declaration and because the declaration encourages further agreements between the parties, we conclude that the settlement agreement did not amend the declaration and therefore the arbitrator did not exceed his authority by enforcing it.

Even if we determined that the settlement agreement amended the declaration, the arbitrator did not exceed his powers by enforcing the agreement. In *EEC Prop. Co. v. Kaplan*, the party challenging the arbitration award argued that the arbitrator lacked the power to fashion a remedy that varied the terms of the underlying partnership agreement. 578 N.W.2d 381, 385 (Minn. App. 1998), *review denied* (Minn. Aug. 31, 1998). This court agreed that the arbitrator's award varied the terms of the partnership agreement, but concluded that the award had "a basis in the underlying contract, the arbitration clause, and

7

the submission." *Id.* at 386. This court reasoned that the arbitrator had broad authority, there were no specific limitations on what remedy the arbitrator could award, the award was fashioned to prevent a more drastic step of dissolving the partnership, and the award drew on provisions in the partnership agreement. *Id.*

Likewise, the arbitrator here had broad authority and no specific limitations on the remedy he could award. As discussed above, the arbitration clause in the declaration broadly applies to "[a]ll questions, differences, disputes or controversies arising [under the declaration]." Furthermore, the arbitration agreement did not limit the remedy that the arbitrator could award, and the governing AAA rules provide that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." Rule 43(a), American Arbitration Association Commercial Arbitration Rules (2009). Additionally, the award here was based on the parties' own settlement agreement, which reasonably attempted to clarify the rights and obligations of the parties under the declaration, given the parties' history of disputes regarding their obligations under the declaration. Moreover, as the district court observed, the declaration "contemplated and encouraged" subsequent agreements such as the settlement agreement. Under these circumstances, even if the settlement agreement amended the declaration, the arbitrator did not exceed his power by confirming the validity and enforceability of the settlement agreement.

In conjunction with its argument that the settlement agreement amends the declaration, the RA argues that enforcing such an amendment is against public policy. While not a statutory basis for vacating an arbitration award under Minn. Stat. § 572B.23

8

(2014), Minnesota courts have recognized that public policy may provide a basis for courts to vacate an arbitration award in limited circumstances. *Brooklyn Ctr.*, 635 N.W.2d at 241; *City of Minneapolis v. Police Officers' Fed'n of Minneapolis*, 566 N.W.2d 83, 89 (Minn. App. 1997). But, because we have determined that the enforcement of the declaration does not amend the declaration, the RA's argument fails at the outset.

Next, the RA argues that the arbitrator lacked the authority to hear the dispute because of the release of claims provision in the settlement agreement. The settlement agreement states that "[t]he parties mutually waive and dismiss with prejudice all claims brought and those that could have been brought within the [arbitration] and said arbitration shall be dismissed in its entirety with prejudice." The settlement agreement also provides that "[i]n the event of a dispute related to this [a]greement," the dispute shall be resolved according to the provisions of the declaration, namely arbitration. The RA argues that because the settlement agreement stated that it dismissed the claims that were brought or could have been brought in the arbitration, the HOA was barred from seeking any remedy in that arbitration and had to commence a separate proceeding to seek enforcement of the settlement agreement, even though the settlement agreement was the parties' solution to the dispute that began the arbitration. Other than referencing the statute providing that a party may seek to have an arbitration award vacated if the arbitrator exceeded his powers, the RA cites no law for this argument.

Because the parties' agreement to waive the claims was dependent upon the execution and enforceability of the settlement agreement, it would be illogical to bar the arbitrator from confirming the settlement agreement on the grounds that the settlement

9

agreement waived the claims that were raised or could have been raised in the arbitration. Moreover, the RA's argument that the parties should have brought the dispute in a separate arbitration proceeding would contravene the underlying purpose of arbitration "to provide an efficient and relatively inexpensive mechanism for resolving disputes." *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 445 (Minn. 2000). Because the RA's argument is illogical and would undermine the purpose of arbitration, we reject the contention that the HOA had to bring a separate arbitration proceeding to seek enforcement of the settlement agreement because of the waiver clause in the settlement agreement.

## II.

Next, the RA argues that the parties did not have an agreement to arbitrate because the parties only agreed to arbitrate the amount of money the RA owed the HOA. Minn. Stat. § 572B.23(a)(5) provides that a court shall vacate an arbitration award if "there was no agreement to arbitrate." "When determining whether parties agreed to arbitrate an issue, the court analyzes whether a valid arbitration agreement exists and, if so, whether the dispute falls within the scope of the agreement." *Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P.*, 643 N.W.2d 333, 337 (Minn. App. 2002). The RA does not challenge the validity of the arbitration clause. And, the clause provides that "[a]ll questions, differences, disputes or controversies arising [under the declaration] . . . shall be settled by arbitration," which would include deciding whether the settlement agreement, which delineated the parties' obligations under the declaration, was valid. The RA's dissatisfaction with the breadth of the arbitration clause is not a basis for vacating the arbitration award.

Finally, the RA argues that the arbitration was conducted without proper notice of the initiation of the proceeding. Minn. Stat. § 572B.23(a)(6) states that a court shall vacate an arbitration award if "the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 572B.09 [2014] so as to prejudice substantially the rights of a party to the arbitration proceeding." The RA does not dispute that it received notice at the beginning of the proceedings, but argues that there was no proper notice of the re-initiation of the proceedings when the HOA moved to confirm the validity and enforceability of the arbitration agreement. The RA points out that it could not have raised its objection to the lack of proper notice before the commencement of the arbitration hearing, as required by Minn. Stat. § 572B.09, because there was no arbitration hearing. But, that statute provides the notice requirements for when "[a] person initiates an arbitration proceeding," not for when a motion is made in an existing arbitration proceeding. Minn. Stat. § 572B.09(a) (2014). Furthermore, the RA fails to cite any prejudice that it suffered because the arbitration was allegedly conducted without proper notice of the re-initiation. And, because it knew of the re-initiation of the proceedings, participated in the proceedings, and had 73 days after the HOA's motion to submit its opposing memorandum, the RA cannot show that it was substantially prejudiced. Because the RA received proper notice of the initiation of the arbitration proceedings, the RA's argument is without merit.

**Affirmed.**